**STATE of Missouri, Respondent,**

**v.**

**Steve KRAUS, Appellant.**

**No. 59135.**

Supreme Court of Missouri,
En Banc.

Dec. 18, 1975.

Victor Tell Neff, Barry & Neff, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., William Arnet, Asst. Atty. Gen., for respondent.

HOLMAN, Judge.

The defendant-appellant moved, under the terms and provisions of Section 195.290,[1] to expunge records of his arrest, trial and conviction for the offense of selling marijuana. The trial court denied the motion and entered judgment accordingly. The defendant appealed to the Court of Appeals, Kansas City District, which court reversed the judgment and remanded the cause for further proceedings in accordance with its opinion. Upon respondent's application we ordered the case transferred and it will be determined here the same as on

---

1. All statutory references are to V.A.M.S.

original appeal. Art. V, Sec. 10, Mo.Const. We affirm.

On April 3, 1972, appellant was convicted of selling marijuana. Appellant was 20 years of age at the time of his conviction. On June 28, 1972, the appellant was placed on judicial probation for a period of three years. On January 16, 1973, approximately six and a half months after he was placed on probation, appellant filed his motion to expunge all official records and recordations of his arrest, trial and conviction. At that time, appellant was 21 years of age. On May 21, 1973, almost eleven months after the probation order, a hearing on this motion was had before the same court that sentenced appellant. Appellant and his probation officer testified that appellant had complied with the conditions of his probation, had committed no additional offense, had been steadily employed, and lived at home with his parents. The State offered no evidence and does not dispute the facts heretofore stated.

The trial court, at the conclusion of the hearing, made the following ruling: "Well, this man was placed on probation on June 28th, 1972 for a period of 3 years. He is still on probation. The term of probation has not been terminated. Under the statute, he can't expunge this from the record until the term of probation has been served. The motion to expunge is denied."

The issue involved on this appeal is the interpretation to be given to the language of Section 195.290. That section reads as follows: "After a period of not less than six months from the time that an offender was placed on probation by a court, such person, who at the time of the offense was twenty-one years of age or younger, may apply to the court which sentenced him for an order to expunge from all official records, . . . and all recordations of his arrest, trial and conviction. If the court determines, after a hearing and after reference to the controlled dangerous substances registry, that such person during the period of such probation and during the period of time prior to his application to the court under this section has not been guilty of any offenses, or repeated violation of the conditions of such probation, he shall enter such order. The effect of such order shall be to restore such person, in the contemplation of the law, to the status he occupied prior to such arrest and conviction. No person as to whom such order has been entered shall be held thereafter under any provision of any law to be guilty of perjury or otherwise giving a false statement by reason of his failures to recite or acknowledge such arrest or trial or conviction in response to any inquiry made of him for any purpose."

The appellant asserts that he presented undisputed evidence that he qualified to have the records of his conviction expunged and that he was not required to wait to request such order until the end of his probationary period. The State asserts that while provisions of Section 195.290 permit the filing of a motion to expunge after six months from the date of probation, the order to expunge cannot be entered until the expiration of the full probationary period and that the trial court was free from error in so holding.

The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. *State ex rel. Dravc Corporation v. Spradling*, 515 S.W.2d 512 (Mo.1974); *Missouri Pacific R.R. Co. v. Kuehle*, 482 S.W.2d 505 (Mo.1972); *State v. Brady*, 472 S.W.2d 356 (Mo.1971); *State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833 (Mo. banc 1971).

The purpose and object of the statute must always be considered. *Edwards v. St. Louis County*, 429 S.W.2d 718 (Mo. banc 1968). The basic intent of the legislature when it enacted Section 195.290 was to provide a procedure whereby a youthful offender under Chapter 195, who had been convicted and placed on judicial probation and who was shown to have been free from

further transgression could move to have the record expunged and be relieved from the life-long burden of a criminal conviction with all of its detrimental results.

■ Section 195.290 was enacted in 1971 as a part of S.C.S.H.C.S.H.B. 69. By that Act the General Assembly adopted the "Uniform Controlled Substances Act" consisting of 36 sections. A review of the Act will demonstrate that it substantially covers the drug field. It lists many controlled substances, provides the method for the legal sale of certain drugs, defines drug offenses, provides the penalties for violation thereof and contains other sections relating generally to controlled substances.

When the first two sentences of Section 195.290 are considered together there appears to be some ambiguity as to the precise time it becomes the duty of the court to enter the order of expunction. Considered alone, however, the second sentence is clearly in accord with the ruling of the trial court. It provides that if the court finds that the applicant "has not been guilty of any offenses or repeated violation of the conditions of such probation—during the period of such probation and during the period of time prior to his application to the court" it shall enter such order. That sentence, which as we have indicated, is clear and precise, constitutes the essence of the section.

In considering the meaning of the first sentence it may be well to bear in mind that legislative enactments are not always faultlessly prepared and hence courts are sometimes called upon to determine the legislative intent. This is demonstrated by the fact that this section refers to the "controlled dangerous substances registry" and that an expert from the state division of health testified that no such registry existed in this state and he was not sure that there was a federal registry.

As indicated, appellant contends that he was entitled to file his application after he had been on probation for at least six months and that the court was required to enter the order of expunction upon proof of proper conduct during the time he was on probation prior to the filing of his application regardless of the length of the original period of probation; that the order would automatically terminate the period of probation.

We do not construe the first sentence of the section in accordance with appellant's contention. To do so would indicate that the lawmakers intended to repeal portions of our judicial probation laws by implication. Section 549.071 provides that "In the case of a felony offense no probation under this chapter shall be granted for a term of less than one year, and no probation shall be granted for a term of longer than five years. In the case of a misdemeanor offense no probation shall be granted for a term of longer than two years. The court may extend the term of the probation, but no more than one extension of any probation may be ordered." If appellant's contention is correct the court would lose control (in drug cases) of the period of probation given it by Section 549.071. A court could be required to terminate probation (by expunction) in slightly more than six months even though it may have been the opinion and desire of the court that such continue for as much as five years. We cannot reasonably attribute that intention to the lawmakers. And this conclusion is fortified by the well established rule that " ' "Repeals by implication are not favored—in order for a later statute to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand; where two acts are seemingly repugnant, they must, if possible be so construed that the latter may not operate as a repeal of the earlier one by implication; if they are not irreconcilably inconsistent, both must stand." ' " *State ex rel. Preisler v. Toberman*, 364 Mo. 904, 269 S.W.2d 753, 754 (1954).

■ It is well settled that statutes relating to the same or similar subject matter,

even though enacted at different times and found in different chapters, are in pari materia and must be considered together when such statutes shed light on the statute being construed. *City of St. Louis v. Carpenter*, 341 S.W.2d 786, 788 (Mo.1961).

We have arrived at a construction of the six months requirement of the first sentence which we consider to be in harmony with the second sentence of the section as well as with the general probation laws.

Chapter 195 encompasses both misdemeanor and felony offenses. It accordingly follows that youthful offenders convicted of either a felony or misdemeanor may apply under the provisions of Section 195.290. The minimum period of probation required in felony cases is one year and there is no minimum period for probation for misdemeanor offenses. It is also true that under the provisions of Section 549.111(1) the court is given the discretionary power to order a discharge from probation at any time. Since one convicted of a misdemeanor may be placed on probation for a period of less than six months and since the court has the discretionary power to discharge from probation at any time, the six month period specified in Section 195.290 was intended by the legislature to provide a minimum period in which the conduct of a person convicted under Chapter 195 could be examined by the court in order to determine whether the applicant has met the requirements of the statute.

Moreover, if the legislature had intended that Section 195.290 should operate as a restriction on the powers granted to the court in Section 549.071 we think it would have specifically so provided as it did in Section 195.221 of this same Act in regard to Section 549.275 relating to the powers of the Board of Probation and Parole.

As indicated by the foregoing we reject the suggestion of the State that it was intended by the first sentence of the section in question that an applicant is given the right to file his application after six months even though it could not be considered by the court until the period of probation had terminated. We see no reasonable basis for such a construction.

■ We rule that under the provisions of Section 195.290 an applicant may not file his application to expunge until after his probationary period has terminated and that the court at the hearing should consider his conduct during the entire period of probation as well as during any subsequent period of time "prior to his application to the court."

For the reasons stated the judgment is affirmed.

MORGAN, BARDGETT, HENLEY, FINCH and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

SEILER, Chief Justice (dissenting).

Respectfully, I am unable to agree that when the legislature in the first sentence of Sec. 195.290 provided that "[a]fter a period of not less than six months from the time that an offender was placed on probation by a court", he could, if 21 years of age or younger at the time of offense, apply for an order of expungement, it meant to say that "after his probationary period has expired" he could make application. The principal opinion, instead of treating the six months period as the minimum period the defendant must wait after being placed on probation before applying for expungement, holds that the six months period is the minimum length of time a defendant must be under observation before a court can make a determination whether defendant has met the requirements of the statute and that it has nothing to do with when the applicant can first make application, which (it says) must await completion of probation.

Had the legislature so intended I believe it would have said so, by using language such as the West Virginia legislature used which reads: "After a period of not less

than six months which shall begin to run immediately upon the expiration of a term of probation imposed upon any person under this chapter, such person may apply to the court for an order to expunge from all official records all recordations of his arrest, trial, and conviction, pursuant to this section." W.Va.Code, Sec. 60A–4–407, 1975 Cum.Supp.

Further, the likelihood that there would ever be any significant number of instances where a drug offender would be placed on a term of probation of less than six months is so minimal that it is difficult to conceive the legislature had in mind insuring against the possibility of an offender not being under observation for at least six months when it enacted the first sentence of Sec. 195.290. I say this because if there is a felony conviction under Chap. 195, then the minimum probation would have to be at least a year and if there is a misdemeanor conviction it seems most unlikely that if the court is going to put the offender on probation it would be for less than six months. As a practical matter, it would be difficult for the Board of Probation and Parole to provide adequate investigation and supervision for the court or any helpful supervision for the offender if the term of probation were set at no more than a few weeks or two or three months. In practice, I doubt if there are enough probation terms of less than six months in drug offense cases for that to have been a serious factor in the legislature's consideration of Sec. 195.290. Rather, I believe the legislature had in mind what the first sentence of Sec. 195.290 plainly sets forth—the minimum length of time after a youthful offender is placed on probation following which he can first apply to have his record expunged.

I would add that while the fact Sec. 195.290 refers to a nonexistent "controlled dangerous substances registry" supports the conclusion made by the principal opinion that the statute was not faultlessly prepared, this fault creates no ambiguity and is immaterial in the determination of what the legislature intended by Sec. 195.290.

The section relates primarily to expungement of the record of conviction and termination of probation. It is reasonable to assume the legislature intended by its enactment to make some change in the existing law in both areas, *In re Tompkins Estate*, 341 S.W.2d 866 (Mo.1961), but as I read the principal opinion it interprets Sec. 195.290 so that no change is made in the existing law as to termination of probation.

I agree that the effect of defendant's contention is that once six months has passed from the time the offender has been placed on probation, if application for expungement is made and if the offender satisfies the court he has not been guilty of any offenses or repeated violation of the conditions of his probation, then the court shall enter the order of expungement, which, under the statute, restores the offender to the status he occupied prior to conviction, thereby terminating probation even though the offender may have originally been placed on probation for a longer term. However, as pointed out in the opinion of the court of appeals, Kansas City district, which reversed and remanded the judgment of the trial court, ". . . the legislature was aware when it enacted Section 195.290, supra, that the shortest initial period for judicial probation was for one year. Yet it saw fit in the light of this restriction to provide that a motion to expunge the record could be filed by the class of youthful offenders, 'after a period of not less than six months' from the date of the probation. This provision is definite and unambiguous and the meaning of the simple words used is clear and does not warrant any complicated judicial interpretation."

This court, the court of appeals, and the parties are in agreement that the purpose of the statute under consideration is remedial—to provide a procedure whereby a youthful offender could have the record wiped clean and not have his rehabilitation hindered by a criminal record. The legislature put such a high value on this that it

provided it would not constitute perjury or a false statement if the offender thereafter failed to disclose or acknowledge his prior conviction.

It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute. 73 Am.Jur.2d, Statutes, Sec. 279, p. 443. "The statute is remedial . . . It should be construed so as 'to meet the cases which are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, provided such an interpretation is not inconsistent with the language used . . . resolving all reasonable doubts in favor of the applicability of the statute to the particular case' . . ." *State ex rel. Brown v. Board of Education*, 294 Mo. 106, 242 S.W. 85, 87 (banc 1922). We are dealing with a narrow class of offenders, those under 21 at the time of the offense and subsequently placed on probation. I do not believe it is consistent with the remedial purpose behind Sec. 195.290 to interpret it so that a youthful offender with a good post-conviction record may have to wait anywhere from one to five years before he can obtain the relief of having his conviction expunged. By that time his chance of rehabilitation, higher education, useful employment, normal living and the opportunity to be a part of society free from the stigma of conviction may have passed. If the remedy is going to do him any good as a youthful offender, it must come soon. I think that is what the legislature had in mind and that the court of appeals was correct in holding that the application could be made and acted upon any time after the first six months of the probationary period has passed. The court must apply the law as written and leave to the legislature the matter of determining questions of legislative policy. *State v. Patton*, 308 S.W.2d 641, 644 (Mo. banc 1958).

The principal opinion makes reference to the general rule that repeals by implication are not favored, that such will be declared only when there is a manifest and total repugnance that the two statutes cannot stand. However, this is not a case of repeal by implication. It is rather a case where a general statute exists and the legislature subsequently enacts legislation directed to a limited or specific remedial purpose within the general proposition. It is to engraft an exception upon the law in this limited situation.

But even if the doctrine of repeal by implication is arguably involved in this case, I see no irreconcilable inconsistency between Sec. 195.290 as viewed by defendant and Sec. 549.071 which governs length of probation generally. As was said in *State v. Taylor*, 323 Mo. 15, 18 S.W.2d 474, 477 (1929): ". . . Conflict is not engendered by the mere fact that there may be cases where the provisions of both statutes cannot be applied effectively . . ." In that case it was claimed there was a repeal by implication of the Habitual Criminal Act by a later statute which provided that for felonies committed or attempted to be committed while armed with a deadly weapon the punishment assessed by the jury should be increased by two years' additional imprisonment, something which could not be done in many cases where the defendant had already received life imprisonment as required under the Habitual Criminal Act (as it then existed). The court pointed out that neither statute affected the nature of the crime being tried, although both affected the extent of the punishment, and the court did not consider there was any conflict "although it is perfectly apparent that both cannot be effectively applied to the punishment in all cases at the same time", supra, at 476.

Similarly in the case before us, neither Sec. 195.290 nor Sec. 549.071 affects the nature of the crime of which the accused on trial may be found to be guilty, but both affect the length of time for which probation may be imposed. All that has happened by the enactment of Sec. 195.290 in 1971, subsequent to the enactment of Sec. 549.071, is that a youthful offender guilty

of a drug violation has a means of terminating his probation earlier and with a different and remedial result than is true of someone convicted of some other felony. So viewed, there is no inconsistency or conflict between the two statutes such as to require the construction which the majority opinion gives the first sentence of Sec. 195.-290.

The principal opinion also refers to the fact that in Sec. 195.221, which sets parole for drug purveyors at completion of sentence plus five years, specific reference is made that Sec. 549.275, a general statute which limits all paroles to the maximum term of sentence, shall not apply, which the principal opinion finds significant, reasoning that lack of a similar reference in Sec. 195.290 to Sec. 549.071 means that even as to a youthful offender the terms of the earlier statute must control.

However, Sec. 195.221 adds to the punitive features of the act, whereas Sec. 195.-290 has the opposite effect. One is to enhance the penalties of violation of parole by a drug purveyor; the other is to assist a first offender by removing his conviction record and the same necessity for making reference to another statute to accomplish the desired and does not exist. In the absence of any action under Sec. 195.290, Sec. 549.071 continues to operate. But the legislature did not want Sec. 549.275 to continue to operate at all as to drug purveyors who violate their parole. Hence, it was necessary in Sec. 195.221 to provide specifically that Sec. 549.275 does not apply.

The principal opinion holds that the second sentence of Sec. 195.290 constitutes the essence of the section and that under it the record cannot be expunged until the term of probation has been served. But as stated in the opinion of the court of appeals, Kansas City district: "This sentence relates to the findings of the court upon hearing of the motion to expunge and the factors or elements for its consideration as to the conduct of the applicant 'during the period of such probation'. Whether the probationary period under judicial scrutiny

lasted for a period of six months and one day to three years would not change the duty imposed upon the court. No qualifying words were employed by the legislature to express any limitation *as to time* in this part of the statute, and certainly nothing is therein expressed or even implied that the judicial functions imposed cannot or should not be exercised until the full course of the initial probation had run . . . The court below did not deny the order to expunge upon the basis that appellant was not shown to have met these conditions during the almost eleven months of his probation but made its ruling solely upon the basis that the *order* to expunge could not be made until the expiration of the full period of probation. It can therefore be assumed that the court properly 'determined' that appellant had, in fact, proved compliance with the conditions required for the order to expunge, in which event Section 195.290, supra, provided that 'he shall enter the order'. In this context, the word 'shall' is mandatory, *State v. Paul*, 437 S.W.2d 98, 101–102[5] (Mo.App.1969), and the order to expunge should have been entered."

I would remand this case as having been improvidently transferred and would let stand the opinion of the court of appeals, Kansas City district, reversing and remanding the trial court.